UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| In re: ) ) Kevin B. Gandy ) ) *Debtor*, ) ) _____ ) ) Elliot J. Schuchardt, ) ) *Appellant,* ) ) *v.* ) ) Kevin B. Gandy, ) ) *Appellee.* ) | Bankruptcy Case No. 11-30369 Case No. 3:14-cv-255-PLR-CCS |

### Memorandum Opinion and Order

In an adversary proceeding before the bankruptcy court, Judge Stair denied the debtor's discharge under 11 U.S.C. § 727(a)(4) after finding that the debtor knowingly and fraudulently made false statements under oath that materially related to his bankruptcy case. The debtor has appealed that decision to this Court. Finding no error in the bankruptcy court's decision, it will be affirmed.

i.

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error. Fed. R. Bankr. P. 8013. A factual finding is clearly erroneous when, "although there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) (quoting *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002)).

The district court reviews conclusions of law *de novo*. *Isaacman v. Nicholson (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994).

ii.

In February 2011, Kevin Gandy filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Chapter 13 debtors are required to make regular payments to a trustee for a certain period of time. The trustee uses these payments, which are calculated based on the debtor's schedule of income and expenses, to pay the debtor's creditors on a pro rata basis. At the end of the term, the debtor's remaining debts are discharged.

In Mr. Gandy's statements and schedules, he represented that he was single, had two dependents (a 48-year-old "Live-In Wife/Girlfriend" and a disabled 27-year-old son), and he worked as a business manager at West Side Honda. In his Chapter 13 Statement of Current Monthly Income and his Calculation of Commitment Period and Disposable Income (the "Chapter 13 Means Test"), Mr. Gandy represented that he was unmarried and that his monthly income was $4,333. This yielded an annualized income of $51,996—an amount less than the median family income for Tennessee of $52,368. Mr. Gandy later amended his schedules to change his marital status from single to married.

The bankruptcy court confirmed Mr. Gandy's Chapter 13 plan over Elliot Schuchardt's objections. Mr. Schuchardt, one of Mr. Gandy's creditors, had objected on the basis that Mr. Gandy's schedules were inaccurate. Mr. Schuchardt challenged Mr. Gandy's income, the value of the vehicle Mr. Gandy listed in his schedules, the payroll deductions and taxes listed, as well as the amount of living expenses claimed. Mr. Schuchardt also objected Mr. Gandy's classification of Mr. Schuchardt's claim as one for "legal services" when his claim was in fact based on a judgment obtained against Mr. Gandy.

2

As a condition of confirmation, the bankruptcy court ordered Mr. Gandy to file a declaration, under penalty of perjury, every 90 days setting forth all income earned during that period. To the extent Mr. Gandy and his wife had net disposable income was in excess of the amount contemplated by the plan, Mr. Gandy was ordered to amend the plan to increase his payments. About a year and a half later, in February 2013, the Chapter 13 Trustee filed a motion to dismiss Mr. Gandy's bankruptcy case because:

> Review of paystubs shows additional income is due into the plan in 3 of the 4 90-day periods in the first year of Mr. Gandy's plan. No additional income has been paid into the plan, nor has the debtor amended his plan/schedules to reflect this excess income, as required by the Court's Order. The Trustee calculates $6,110.00 is due into the plan for the excess income earned during the first year of the plan.

Before the bankruptcy court could hold a hearing on the Chapter 13 Trustee's motion to dismiss, Mr. Gandy converted his case to Chapter 7.

In converting his case, Mr. Gandy filed a Chapter 7 Statement of Current Monthly Income and a Chapter 7 Means Test, again certifying that he was not married, that he had a current monthly income of $4,333, and that he had an annualized income of $51,996. Because his stated annualized income was less than the applicable median family income of $52,368, a presumption of abuse did not arise under 11 U.S.C. § 707(b)(2).

Mr. Schuchardt then filed a motion to dismiss under § 707(b), arguing that to grant bankruptcy relief to Mr. Gandy would be an abuse of the provisions of Chapter 7. Mr. Schuchardt argued that Mr. Gandy's Chapter 7 Means Test was false, and that Mr. Gandy earned too much to qualify for relief under Chapter 7. Mr. Gandy argued that Mr. Schuchardt lacked standing to file a motion to dismiss. Under § 707(b)(6), Mr. Gandy's stated current monthly income in his Chapter 7 Means Test was below applicable family median—the amount required for a creditor to have standing to file a motion to dismiss. The bankruptcy court denied Mr.

3

Schuchardt's motion to dismiss because, based on the income stated in Mr. Gandy's Means Test, Mr. Schuchardt lacked standing.

Accordingly, Mr. Schuchardt initiated an adversary proceeding, asserting that Mr. Gandy should be denied discharge for knowingly and fraudulently filing a false Chapter 13 Statement of Current Monthly Income, a false Chapter 7 Statement of Current Monthly Income, and a false Schedule I. In response, Mr. Gandy withdrew his Chapter 7 Means Test, stating that it had been filed "in error." He also filed an Amended Chapter 13 and Chapter 7 Means Tests, again certifying that he was unmarried, but now stating that his monthly income was $4,689, which comes out to an annualized income of $56,268—more than the $52,368 income necessary for Mr. Schuchardt to have had standing to move for dismissal under § 707(b)(6).

Finding that Mr. Gandy filed a false means test, false schedule of income, and false statement of financial affairs, the bankruptcy court entered an order denying Mr. Gandy discharge under § 727(a)(4) of the Bankruptcy Code. This appeal followed.

### iii.

Section 727(a)(4) authorizes bankruptcy courts to deny a debtor's discharge where the debtor "knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a). The party objecting to discharge under § 727(a)(4) must establish by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683, 685 (6th Cir. 2000); Fed. R. Bankr. P. 4005.

A statement is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition

4

of property." *In re Keeney*, 227 F.3d at 686. Fraudulent intent can be evidenced by the facts and circumstances of a case; and "[a] reckless disregard as to whether a representation is true will . . . satisfy the [fraudulent] intent requirement." *Id.* On the other hand, a debtor is entitled to discharge if the false information merely results from mistake or inadvertence. *Id.*

Mr. Gandy's Chapter 13 and Chapter 7 Means Tests were both executed under penalty of perjury. They were also false. In the means tests, the debtor is required to state his average monthly income for the six months preceding his bankruptcy filing. Mr. Gandy indicated in his initial Chapter 13 means test that his average monthly income was $4,333. Mr. Gandy's pay stubs for the six months preceding his Chapter 13 filing actually indicate a monthly income of $4,689.20. Nevertheless, over two years later, when Mr. Gandy converted his case to Chapter 7, he filed a Chapter 7 Means Test with the same, incorrect $4,333 income figure.

Mr. Gandy concedes that the number was "a mistake" or a "math error," but he maintains that it was not material to the bankruptcy case and that he lacked fraudulent intent. [R. 6, Gandy Appeal Brief, Page ID 601] ("The fact that the Debtor made an initial mistake on February 3, 2011 and then corrected the math error on July 31, 2013 had no controlling aspect determining the outcome of the case and would not evidence the "fraudulent and knowingly" element which [*sic*] must be proven by the Appellee.").

Mr. Gandy's characterization of his false Chapter 7 and Chapter 13 Means Tests as a mere "math error" was reasonably viewed by the bankruptcy court as disingenuous. As early as February 2011, Mr. Schuchardt objected to Mr. Gandy's Chapter 13 plan on the basis that Mr. Gandy understated his income. The bankruptcy court resolved that objection in its confirmation order by requiring Mr. Gandy to file his income information at 90-day intervals. The Chapter 13 plan also required Mr. Gandy to amend his plan if he earned additional income. When the

5

Chapter 13 Trustee moved to dismiss Mr. Gandy's bankruptcy in February 2013, on grounds that Mr. Gandy failed to pay additional income in the amount of $6,110 into his plan, Mr. Gandy converted his case to Chapter 7. In doing so, Mr. Gandy relied on the same false income figures in his new Chapter 7 Means Test. The day after Mr. Gandy filed his false Chapter 7 Means Test, Mr. Schuchardt filed a motion to dismiss the bankruptcy. It was abundantly clear that Mr. Schuchardt was challenging the veracity of Mr. Gandy's numbers. It was also clear that the bankruptcy court relied on Mr. Gandy's false income figures when it found that Mr. Schuchardt lacked standing to file a motion to dismiss under § 707.

The bankruptcy court reasonably concluded that Mr. Schuchardt's objections should have put Mr. Gandy on notice that he should recheck his numbers. This is especially true considering the fact that the bankruptcy court relied solely on Mr. Gandy's numbers in determining that Mr. Schuchardt lacked standing to pursue his motion to dismiss. The facts easily establish a reckless disregard as to whether Mr. Gandy's statements were true, which is sufficient to support the bankruptcy court's finding of fraudulent intent.

Mr. Gandy's assertion that his false statements were immaterial is equally unavailing. Because the income reported by Mr. Gandy was less than the applicable median monthly income, a presumption of abuse did not arise. It also meant that a creditor did not have standing to file a motion to dismiss the case for abuse (which is why Mr. Schuchardt's motion to dismiss was denied). When he included his incorrect figure in the Chapter 13 Means Test, he was not required to complete a number of sections on the form because his reported income was below the applicable median income. The same is true of his Chapter 7 Means Test. Mr. Gandy's stated income figures directly related to how much he was required to pay under the terms of his Chapter 13 plan, and he was also under a continuing obligation to amend his Chapter 13 plan if

6

his income exceeded the amount initially claimed. He failed to do so. This all goes to show that Mr. Gandy's false statements were material. The false information directly related to his rights and obligations under the Bankruptcy Code, and resulted not only in underpaying his creditors, but served as the basis for denying Mr. Schuchardt's motion to dismiss.

Mr. Gandy's statements of income and Chapter 7 and Chapter 13 Means Tests were made under oath. They included false statements that were made with reckless disregard (at best) to the truth of the matter, evidencing fraudulent intent. The statements were also material. The bankruptcy court's factual conclusions relating to each of these elements are not clearly erroneous. Accordingly, the bankruptcy court order denying discharge under 11 U.S.C. § 727(a)(4)(A) is **Affirmed**.

**It is so Ordered.**

_____
UNITED STATES DISTRICT JUDGE

7

Case 3:14-cv-00255-PLR-CCS   Document 10   Filed 07/20/15   Page 7 of 7   PageID #: 685